## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

| | |
|---|---|
| RACHEL FRANK and DANIELLE COWETTE, on behalf of themselves and all others similarly situated, | Case No.    1:18-cv-02452-CMC |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| GOLD'S GYM OF AIKEN, SOUTH CAROLINA, GOLD'S GYM OF NORTH AUGUSTA, SOUTH CAROLINA, GOLD'S GYM OF AUGUSTA, GEORGIA (BOBBY JONES EXP.), GOLD'S GYM OF AUGUSTA, GEORGIA (WALTON WAY EXT.) and GOLD'S GYM OF EVANS, GEORGIA. | |
| Defendants. | |

### INTRODUCTION

1.      Rachel Frank and Danielle Cowette ("Plaintiffs") bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Gold's Gym of Aiken, South Carolina, Gold's Gym of North Augusta, South Carolina, Gold's Gym of Augusta, Georgia (Bobby Jones Exp.), Gold's Gym of Augusta, Georgia (Walton Way Ext.), Gold's Gym of Evans, Georgia, and Gold's Gym International, Inc. ("Defendants" or "Gold's Gyms"), in negligently, and/or willfully contacting Plaintiffs through text message calls on Plaintiffs' cellular telephones, in violation of the Telephone Consumer

1

Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiffs privacy. Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

2.      In an attempt to solicit business, Gold's Gyms routinely contacts potential gym members through text messages with automatic telephone dialing equipment. However, Gold's Gyms regularly sends these text messages to cellular telephone numbers, without consent, in violation of the TCPA. Additionally, after being advised that the text message was not consented to, Gold's Gym continues to send text messages to those individuals.

3.      The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the call recipients.

4.      Gold's Gyms violations caused Plaintiffs and members of the Class actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages, as well as the violation of their statutory rights.

5.      Plaintiffs and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Gold's Gyms conduct, and is likely to be redressed by a favorable decision in this action.

6.      Plaintiffs seek an injunction stopping Gold's Gyms from sending

unsolicited text messages, as well as an award of statutory damages under the TCPA.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seeks up to $1,500 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

8.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

9.      Venue is proper in the United States District Court for the District of South Carolina pursuant to 28 U.S.C. §§ 1391(b) because Defendants, at all times herein mentioned, were doing business in the State of South Carolina, and a substantial part of the events giving rise to the claim occurred in this jurisdiction.  Specifically, both Plaintiffs advised Defendants while in Aiken, South Carolina to not contact them on their cellular phones yet, were sent text messages from Defendants while in South Carolina in violation of the TCPA.

10.      Despite a lack of consent from the Plaintiffs, the Gold's Gym of Aiken, South Carolina provided the Plaintiffs' cellular phone numbers to all Defendants for bulk marketing purposes.  On information and belief, the Gold's Gym of Aiken, South

Carolina, Gold's Gym of North Augusta, South Carolina, Gold's Gym of Augusta, Georgia (Bobby Jones Exp.), Gold's Gym of Augusta, Georgia (Walton Way Ext.), Gold's Gym of Evans, Georgia, combine their marking effort using the phone number 803-832-4832 and the short codes 522-36 and 873-65 to send text messages in bulk fashion to numerous cellular telephones. Defendants engage in aggressive marketing strategies, which have included sending bulk mail to over 60,000 addresses in South Carolina, as well as bulk test messages to consumers' cellular telephones, all in an attempt to obtain new members. *See http://johnplatero.com/pdfs/articles/voive-functional-training.pdf* (last visited on August 22, 2018).

## PARTIES

11.     Plaintiff Rachel Frank is, and at all times mentioned herein was, a resident of Saint Paul, County of Ramsey, State of Minnesota. She is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

12.     Plaintiff Danielle Cowette is, and at all times mentioned herein was, a resident of Minnetonka, County of Hennepin, State of Minnesota. She is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

13.     Defendant Gold's Gym of Aiken, South Carolina maintains its corporate office at 101 Corporate Pkwy, Aiken, SC 29803 and is a "person" as defined by 47 U.S.C. § 153 (32).

14.     Defendant Gold's Gym of North Augusta, South Carolina maintains its corporate office at 101 Edgewood Drive, North Augusta, SC 29841 and is a "person" as defined by 47 U.S.C. § 153 (32).

4

15.     Defendant Gold's Gym of Augusta, Georgia (Bobby Jones Exp.) maintains its corporate office at 596 Bobby Jones Expressway Suite 130, Augusta, GA 30907 and is a "person" defined by 47 U.S.C. § 153 (32).

16.     Defendant Gold's Gym of Augusta, Georgia (Walton Way Ext.) maintains its corporate office at 3637 Walton Way Extension, Augusta, GA 30909 and is a "person" defined by 47 U.S.C. § 153 (32).

17.     Defendant Gold's Gym of Evans, Georgia maintains its corporate office at 4408 Evans to Locks Rd, Evans, GA 30809 and is a "person" defined by 47 U.S.C. § 153 (32).

18.     Each of the Defendants are owned by Shaun Smith and related entities acting in concert in implementing their marketing schemes.

19.     Plaintiffs allege that at all times relevant herein Defendants conducted business in the states of South Carolina and Georgia and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. §§ 227 *et seq.*

20.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), [1]in response to a growing number of consumer complaints regarding certain telemarketing practices.

21.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq*

227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

22.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

23.     As of October 16, 2013, express written consent is required to make any such telemarketing calls or text messages to the telephones of consumers.  The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.[4]

24.     On July 10, 2015, the FCC released a Declaratory Ruling which clarified that a consumer who had previously provided "express consent" to receive automated calls or text messages has a right to revoke such consent. Under the Declaratory Ruling, consumers can revoke consent using any reasonable method, including orally

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014 (2003).

[4] *In the matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 1830, 1884 (2012).; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Gutierrez v. Barclays Grp.*, 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011).

or in writing, that clearly expresses his or her desire not to receive further calls.[5]

25.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

26.    A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

27.    Plaintiff Rachel Frank does not have a Gold's Gym membership to any Gold's Gym location.

28.    On September 19, 2017, Ms. Frank visited the Gold's Gym of Aiken, South Carolina.  During her visit, Ms. Frank filled out information for a guest pass. The guest pass required Ms. Frank to insert her cellular phone number.  Although Ms. Frank provided her cellular phone number as required, she checked the box which identified that she did not consent to receive any text messages from any Gold's Gym location. The cellular phone number Ms. Frank provided included the Minnesota area code (612).

29.    However, despite a lack of consent, on September 20, 2017 at 2:59pm, Ms. Frank received a text message to her (612) cellular phone number provided on her guest pass from the number 803-832-4832 stating, "Hey Rachel, I wanted to follow up with you to see how your first visit to the gym was yesterday.  Did you enjoy yourself?

---

[5] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C. Rcd. 7961 (2015).

– Amanda GOLDs GYM".

30.     Again, the next day on September 21, 2017 at 12:22pm, Ms. Frank received a second text message to her (612) cellular phone from the number 803-832-4832 stating, "Hey Rachel, I wanted to let you know that we have just launched an amazing program. We are giving out a 12 week fitness program to all guest upon getting started. I'd love to give you your first month for free and introduce you to our fitness coach."

31.     On September 25, 2017, Ms. Frank visited the Gold's Gym of Aiken, South Carolina location again using her guest pass and advised that she received text messages from Defendants despite informing on her guest pass information sheet that she did not consent to receive any text messages from Gold's Gym.  The agent at the Gold's Gym of Aiken, South Carolina location apologized to Ms. Frank for the unsolicited text messages and advised they would not occur again.

32.     However, despite Ms. Frank's attempts to prevent unsolicited text messages from Gold's Gym locations, on January 21, 2018 at 12:23pm, four month after Ms. Frank's visit to the Gold's Gym of Aiken, South Carolina, while Ms. Frank was home in Minnesota, Ms. Frank received a text message to her (612) cellular phone from the number 873-65 stating, "Golds Gym: Join the Gold's Gym Family. Click the link below to register for your first 3 months FREE! (803) 648-4653".

33.     Then again on January 29, 2018 at 5:08pm, Ms. Frank received a text message to her (612) cellular phone from the number 522-36 stating, "Welcome to Gold's Gym SC & GA Alerts. You will now receive periodic or recurring messages.

Standard Msg & data rates apply. Reply HELP for HELP or STOP to STOP." Ms. Frank received this text message while home in Minnesota.

34.    Ms. Frank also received a second text message on January 29, 2018, to her (612) cellular phone from the number 522-36 stating, "Golds Gym Aiken: Offer only good for 24 hours ACT NOW!!! No Enrollment & First Month FREE Click the link below. https://goo.gl/36wujt txt stop 2 stop." Ms. Frank received this text message while home in Minnesota.

35.    These five (5) unsolicited text messages placed to Ms. Frank's (612) cellular phone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone and/or by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A).

36.    Like Ms. Frank, on September 25, 2017, Ms. Cowette visited the Gold's Gym of Aiken, South Carolina. During her visit, Ms. Cowette filled out information for a guest pass. The guest pass required Ms. Cowette to insert her cellular phone number. Although Ms. Cowette provided her cellular phone number as required, she checked the box which identified that she did not consent to receive any text messages from any Gold's Gym location. The cellular phone number Ms. Cowette provided included the Minnesota area code (651).

37.    However, despite a lack of consent, on October 10, 2017 at 4:07pm, while home in Minnesota, Ms. Cowette received a text message to her (651) cellular

phone number provided on her guest pass from the number 803-832-4832 stating, "Hi Danielle, this is Hannah from Gold's Gym. I wanted to follow up with you and see how your visit was with us and if you had any further questions/concerns for me? Hannah-Gold's Gym Aiken – To stop these messages, reply STOP".

38.     Ms. Cowette, knowing that she had advised Gold's Gyms that she did not consent to text messages, replied to the text message stating, "I opted out of receiving text message.  Thanks."

39.     However, despite Ms. Cowette's attempts to prevent unsolicited text messages from Gold's Gym locations, on January 29, 2018 at 5:08pm, four months after Ms. Cowette's visit to the Gold's Gym of Aiken, South Carolina, while Ms. Cowette was home in Minnesota, Ms. Cowette received a text message to her (651) cellular phone number from the number 522-36 stating, "Welcome to Gold's Gym SC & GA Alerts. You will now receive periodic or recurring messages. Standard Msg & data rates apply. Reply HELP for HELP or STOP to STOP".  This is the exact same text message received by Ms. Frank.

40.     Ms. Cowette also received a second text message on January 29, 2018, to her (651) cellular phone number from the number 522-36 stating, "Golds Gym Aiken: Offer only good for 24 hours ACT NOW!!! No Enrollment & First Month FREE Click the link below. https://goo.gl/36wujt txt stop 2 stop." Again, this is the exact same message received by Ms. Frank.  Ms. Cowette received this text message while home in Minnesota.

41.     These three (3) unsolicited text messages placed to Ms. Cowette's (651)

cellular phone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone and/or by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A).

42.     The existence of an ATDS is evidenced by the fact that the text messages received by the Plaintiffs from the numbers 873-65 and 552-36 were generic as to the intended recipient, i.e., the text messages do not address Plaintiffs individually or in any fashion. Such generic and impersonal messages indicate that these text messages were sent in bulk fashion to numerous cellular telephones at one time and not manually delivered by human intervention for each and every delivery.    Furthermore, the Plaintiffs received the text messages from the number 522-36 on the exact same day, at the exact same time and with the exact same content.

43.      The telephone numbers that Defendants, or its agents, texted were assigned to cellular telephone services for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

44.     These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45.     On information and belief, Defendants have a corporate policy to use an automatic telephone dialing system, and to make autodialer calls just as they did to Plaintiffs cellular telephones in this case.

46.     On information and belief, the Gold's Gym of Aiken, South Carolina,

Gold's Gym of North Augusta, South Carolina, Gold's Gym of Augusta, Georgia (Bobby Jones Exp.), Gold's Gym of Augusta, Georgia (Walton Way Ext.), Gold's Gym of Evans, Georgia, combine their marking effort using the phone number 803-832-4832 and the short codes 522-36 and 873-65 to send text messages in bulk fashion to numerous cellular telephones.

47.    In fact, all five gyms, the Gold's Gym of Aiken, South Carolina, Gold's Gym of North Augusta, South Carolina, Gold's Gym of Augusta, Georgia (Bobby Jones Exp.), Gold's Gym of Augusta, Georgia (Walton Way Ext.), Gold's Gym of Evans, Georgia, utilize the website https://getgolds.com/ and are subject the same special offers, including a free class pass.

48.    On information and belief, all five gym franchisees, the Gold's Gym of Aiken, South Carolina, Gold's Gym of North Augusta, South Carolina, Gold's Gym of Augusta, Georgia (Bobby Jones Exp.), Gold's Gym of Augusta, Georgia (Walton Way Ext.), Gold's Gym of Evans, Georgia, are owned and operated by Shaun Smith.

49.    On information and belief, the Gold's Gym of Aiken, South Carolina provided the Plaintiffs cellular phone numbers to the Defendants for bulk marketing purposes despite the Plaintiffs lack of consent to receive text messages.

50.    Thus, these text messages by Defendants or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves as defined as follows:

Any person in the United States who (1) Defendants or its agents placed a text message call; (2) to that person's cellular telephone number; (3) through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendants have no record of prior express consent for such individual to make such call or where the individual revoked consent, within four years prior to the filing of the original Complaint through the date of final approval.

52.     Defendants and its employees or agents are excluded from the Class.

53.     Plaintiffs do not know the number of members in the Class, but believe the members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

54.     Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiffs and members of the Class via their cellular telephones by using unsolicited text messages, thereby causing Plaintiffs and members of the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and members of the Class. Plaintiffs and the Class members were damaged thereby.

55.     This suit seeks only statutory damages and injunctive relief for recovery of economic injury on behalf of the Class and is expressly not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the definitions of the Class to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery

56.     The joinder of the members of the Class is impractical and the disposition

of their claims in the class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

57.　　　There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a.  Whether, within four years prior to the filing of the original Complaint through the date of final approval, Defendants or its agents sent text messages without the recipients' prior express consent (other than a telephone call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;

    b.  Whether the equipment Defendants, or its agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

    c.  Whether Defendants, or its agents, systematically sent text messages to persons who did not previously provide Defendants with their prior express consent to receive such text messages;

    d.  Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

    e.  Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

58.    As persons that received at least one text message to their cell phone without their prior express consent, Plaintiffs are asserting claims that are typical of the Classes. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interest antagonistic to any member of the Classes.

59.    Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, members of the Class could afford to individually seek legal redress for the wrongs complained of herein.

60.    Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

61.    A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of the members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

62.     This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants practices challenged herein apply to and affect each of the Class' members uniformly. Plaintiffs challenge to those practices hinges on Defendants conduct with respect to the Class as whole, not on facts or law applicable only to Plaintiffs.

### FIRST CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *ET SEQ.*

63.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

64.     Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiffs and the other members of the Class without their prior express written consent.

65.     Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers or by prerecorded voice. By using such equipment, Defendants were able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone

numbers of consumers without human intervention.

66.     These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendants were able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention.  These text messages are analogous to a prerecorded voice made without the prior express consent of the Plaintiffs.

67.     Defendants' text messages were sent without the prior express consent of the Plaintiffs and the other members of the Class to receive such text messages.

68.     The foregoing acts and omissions of Defendants and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

69.     As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Plaintiffs and the Class are also entitled to seek injunctive relief prohibiting such conduct in the future.

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE**
**CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *ET SEQ*.**

71.     Plaintiffs incorporate by reference the above paragraphs 1 through 62 inclusive of Complaint as though fully stated herein.

72.     Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiffs and the other members of the Class without their prior express written consent.

73.     Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers or by prerecorded voice. By using such equipment, Defendants were able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

74.     These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendants were able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of the Plaintiffs.

18

75.     Defendants' text messages were sent without the prior express consent of the Plaintiffs and the other members of the Class to receive such text messages.

76.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

77.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

78.     Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs respectfully requests the Court to grant Plaintiffs and the Class members the following relief against Defendants:

## FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

79.     As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each member of the Class $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

80.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek injunctive relief prohibiting such conduct in the future.

81.     Any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

82.     As a result of Defendants', and Defendants' agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

83.     Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

84.     Any other relief the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this 5th day of September, 2018.

By: *s/ Penny Hays Cauley*
Penny Hays Cauley, Esq.
HAYS CAULEY, P.C.
1303 W. Evans Street
Florence, South Carolina 29501
Telephone: (843) 665-1717
*Phc917@hayscauley.com*

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #:  0249646
CONSUMER JUSTICE CENTER P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
*tommy@consumerjusticecenter.com*

Ronald A. Marron, Esq.
Kas L. Gallucci, Esq.
LAW OFFICES OF RONALD A.

MARRON
651 Arroyo Drive
San Diego, California 92103 Telephone:
(619) 696-9006
*ron@consumersadvocates.com*
*kas@consumersadvocates.com*


***ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASS***